UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


AMERICAN FAMILY LIFE ASSURANCE
COMPANY OF COLUMBUS                                          PLAINTIFF


VS.                                  CIVIL ACTION NO. 3:10CV667TSL–FKB


GLENDA BILES, INDIVIDUALLY,
NATURAL MOTHER OF DAVID BILES,
DECEASED, AND ADMINISTRATRIX OF
THE ESTATE OF DAVID BILES; BEVERLY
GARRETT, INDIVIDUALLY AND NATURAL
SISTER OF DAVID BILES, DECEASED;
PATRICIAL FINNAN, INDIVIDUALLY AND
NATURAL SISTER OF DAVID BILES, DECEASED;
AND MICHAEL LOCKWOOD, INDIVIDUALLY AND
NATURAL BROTHER OF DAVID BILES,
DECEASED                                                    DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff
American Family Life Assurance Company of Columbus (AFLAC) for
summary judgment on its complaint to compel arbitration;[1]
defendants' motion to dismiss; defendants' motion for leave to
file counterclaim and third-party complaint; defendants' Rule
56(f) motion for continuance; defendant Michael Lockwood's motion
to dismiss for lack of personal jurisdiction; and AFLAC's motion
to strike and amended motion to strike affidavit of Robert Foley.
These motions have been briefed by the parties, and the court,

---

[1]     While AFLAC has filed two "supplemental motions for
summary judgment," its purpose in doing so is to present
additional, or supplemental evidence, in support of its original
motion.

having now considered these various motions, finds and concludes
as follows.

    Facts and Allegations

    This case concerns a life insurance policy issued by
plaintiff AFLAC to David Biles, which named as co-beneficiaries
Biles' mother, Glenda Biles, and his roommate and friend Kenneth
Ashley.  Following David Biles' death on October 10, 2007, Ashley
submitted a claim for benefits under the policy, which AFLAC paid.
Glenda Biles also submitted a claim for benefits, which AFLAC
paid.  Subsequently, on September 10, 2010, Biles' heirs,
including Glenda Biles and David Biles' siblings, filed suit in
the Circuit Court of Hinds County, Mississippi against AFLAC and
Brendan Hammond, AFLAC's agent who was alleged to have sold the
policy to David Biles, and against Kenneth Ashley, alleging that
Ashley caused or contributed to David Biles' death and thus was
prohibited under the law and the terms of AFLAC's policy from
recovering death benefits under the policy; that AFLAC and Hammond
knew or should have known that Ashley caused or contributed to
David Biles' death; and therefore, that they wrongfully paid
benefits under the policy to Ashley which should have been paid to
them as Biles' rightful heirs.[2]

_____

        [2]     The Biles heirs also sued a local bar and its owners,
T&J Business, Inc., Robert Shivers and Jack Myers.  They allege in
their state court complaint that on the evening of his death,
after drinking an excessive amount of alcohol at the bar (and
being served alcohol while obviously intoxicated), David Biles

On November 17, 2010, AFLAC brought the present action in this court to compel arbitration of the Biles heirs' claims against it and its agent, Hammond, pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, based on an arbitration provision in the subject insurance policy.  AFLAC has now moved for summary judgment on its complaint to compel arbitration. Defendants initially responded in opposition to the motion, contending there is no valid arbitration agreement as the signatures on the application and the Acknowledgment of Arbitration Agreement presented by AFLAC are not David Biles' signature but are likely forgeries.  In support of their position, plaintiffs offered an affidavit of a handwriting expert, Robert Foley.  AFLAC responded by moving to strike Foley's affidavit and by filing supplemental evidence and argument in support of its summary judgment motion addressed to defendants' forgery allegation, including an affidavit from its own expert and other proof tending to substantiate AFLAC's position that Biles'

---

returned to the home he shared with Kenneth Ashley, where, with
the assistance of Ashley, he took an excessive dose of the
prescription sleep aid Ambien, after which he became deathly ill
and died.  The heirs allege that Ashley
        either intentionally dispensed Ambien and other drugs to
        David Biles, negligently provided David Biles with an
        excessive dose of Ambien, negligently observed or
        assisted David Biles in taking Ambien, and/or
        negligently failed to seek emergency medical treatment
        for David Biles which was a contributing proximate cause
        of the death of David Biles.

signature on the insurance application and arbitration
acknowledgment is genuine.

After briefing on these various motions was complete,
defendants moved to dismiss AFLAC's complaint to compel
arbitration.  They have since filed various other motions, which
are addressed herein.  In addition, defendant Michael Lockwood has
moved to dismiss for lack of personal jurisdiction.

<u>Defendant Michael Lockwood's Motion to Dismiss</u>

Defendant Michael Lockwood has moved to dismiss for lack of
personal jurisdiction, asserting that he is a citizen of Texas who
lacks sufficient contacts with the state of Mississippi to allow
this court to exercise jurisdiction over him.  Lockwood states
that he does not live in Mississippi; that he has not
transacted any business in Mississippi; that the transaction which
is the subject of AFLAC's complaint to compel arbitration did not
involve him and he was not a party to the contract of insurance;
that he was not a beneficiary of the subject life insurance
policy; and that he did not sign the acknowledgment of arbitration
agreement.  However, Lockwood, along with his mother and siblings,
has voluntarily initiated litigation against AFLAC in this forum,
albeit in state court, alleging he is entitled to benefits under
AFLAC's policy and that AFLAC has breached its contract with him.
Specifically, Lockwood and his state court co-plaintiffs allege,
"AFLAC wrongfully breached its contract with Plaintiffs' decedent
and plaintiffs."  In the court's opinion, by affirmatively suing

AFLAC in this forum to enforce his claimed right to recover benefits under the AFLAC policy, Lockwood has effectively consented to suit and/or waived any defense to personal jurisdiction in this suit by AFLAC in this forum to enforce the very same policy's arbitration provision.  Cf. Gen. Contracting & Trading Co., L.L.C. v. Interpole, Inc., 940 F.2d 20, 23 (1st Cir. 1991) (defendant waived its jurisdictional defense by suing the plaintiff in the objectionable forum in a second suit involving the same facts).[3]  Accordingly, his motion to dismiss will be denied.

---

[3]     The court notes that the Fifth Circuit has cited General Contracting & Trading Co., L.L.C. v. Interpole, Inc., 940 F.2d 20, 23 (1st Cir. 1991), with implicit approval.  See, e.g., Brokerwood Prods. Int'l, Inc. v. Cuisine Crotone, Inc., 104 Fed. App'x 376, 380 (5th Cir. 2004) (summarizing Interpole, stating: "[A] defendant waived its jurisdictional defense by suing the plaintiff in the objectionable forum in a second suit involving the same facts."); PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland), 260 F.3d 453, 459 n.6 (5th Cir. 2001) (citing Interpole for "the well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections"); see also Praetorian Specialty Ins. Co. v. Auguillard Const. Co., Inc., -- F. Supp. 2d --, 2010 WL 2026655, 3 (W.D. La. 2010) (noting Fifth Circuit's favorable citation of Interpole, and finding that party which initiated suit in state court one month after being sued in federal court arising out of same nucleus of operative facts operating facts was subject to jurisdiction under the doctrine of consent and waiver).

Defendants' Motion to Dismiss

In their motion to dismiss, defendants urge dismissal of this case in favor of their pending state court case, contending as follows:

> The State Court Complaint has all of the parties necessary to adjudicate all causes of action, whereas only one cause of action as to one party is being adjudicated in the Federal District Court. AFLAC, seeks relief for its agent, Brendan C. Hammond, but AFLAC has intentionally not made Brendan C. Hammond a Plaintiff in the Federal Court case because his presence would destroy diversity of citizenship and the Court would not have jurisdiction of the case. The Defendant, AFLAC, has obviously engaged in flagrant forum shopping and has fraudulently failed to join a party who is necessary for full adjudication of the causes of action and as a result thereof, the Court does not have jurisdiction of this case and it should be dismissed.

In their accompanying memorandum, defendants argue for dismissal based on the Colorado River abstention doctrine, contending that this court should dismiss in deference to their earlier-filed state court case since the issues brought before this court by AFLAC in this case are present and being litigated more comprehensively (due, in particular, to the presence of Brendan Hammond) in their state court action.[4]

Initially, the court notes that defendants' position on subject matter jurisdiction in this court is unclear. The Federal

_____

[4]   Plaintiffs go so far as to argue that the state court has already ruled on, and denied, a motion by AFLAC to compel arbitration. In fact, the court did not deny the motion on the merits, but rather postponed consideration of the motion in order that the parties could conduct discovery on the forgery issue. There is thus no merit to their claim that the state court's having already ruled is a basis for dismissal by this court.

Arbitration Act (FAA) "is something of an anomaly in the field of federal-court jurisdiction.  It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 26 n.32, 103 S. Ct. 927, 942 n.32, 74 L. Ed. 2d 765 (1983).  AFLAC asserts jurisdiction in this court on the basis of diversity jurisdiction, since it is a foreign corporation and defendants are all Mississippi citizens.  In their motion to dismiss, defendants do not assert, even indirectly, that the court lacks subject matter jurisdiction.  They do characterize Hammond, whose nondiverse citizenship prevents his being made a party to this action, as a "necessary" party, but they do not claim that he is an "indispensable" party; and under Federal Rule of Civil Procedure 19, dismissal is not required due to the absence of a party who is necessary, but not indispensable.  See Shelton v. Exxon Corp., 843 F.2d 212, 216 (5th Cir. 1988) ("Rule 19 of the Federal Rules of Civil Procedure requires that if, as a matter of equity the court finds that the lawsuit cannot proceed without the absent party, then that party be considered indispensable and the case dismissed.  If, however, the lawsuit can proceed, the party is only a necessary one.  Unless the court finds that a party is indispensable, therefore, it has no discretion, except in the most

exceptional cases, to dismiss the case even if a necessary party cannot be joined.").

However, in defendants' later-filed motion for leave to file counterclaim and third-party complaint, they state, "The Answering Defendants have filed a Motion to Dismiss the Petition for Order Compelling Arbitration since this Court does not have Jurisdiction of this case...."  The only arguable basis on which defendants could consider themselves to have challenged this court's jurisdiction relates to Hammond's absence from the case.  Yet if Hammond were merely a "necessary" party, as defendants have argued, his absence from the case would not require dismissal; and Hammond is not an indispensable party.  See Regions Bank v. Britt, 642 F. Supp. 2d 584, 589 (S.D. Miss. 2009) (concluding that bank employees who, along with bank, fell within scope of arbitration agreement, and on whose behalf bank sought to compel arbitration, were not indispensable parties) (citing AmSouth Bank v. Bowens, 351 F. Supp. 2d 571, 572 (S.D. Miss. 2005), and AmSouth Bank v. Stewart, Civil Action No. 3:03CV1180, 2004 WL 914638 (S.D. Miss. Apr. 27, 2004), which reached same conclusion); see also Snap-On Tools, Corp. v. Mason, 18 F.3d 1261, 1264 (5th Cir. 1994) (holding that the fact that employee defendants who fell within the scope of an arbitration agreement were party defendants in the underlying state court litigation did not render them indispensable parties in a federal action to compel arbitration brought under the Federal Arbitration Act).  Accordingly, to the

extent defendants may seek dismissal for lack of subject matter jurisdiction, their motion is denied.

Defendants urge the court to abstain from exercising jurisdiction in this case in deference to their pending state court proceedings under <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).  While federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," <u>id</u>. at 817, 96 S. Ct. at 1246, and the pendency of an action in the state court is generally "no bar to proceedings concerning the same matter in the Federal court having jurisdiction," <u>id</u>., 96 S. Ct. at 1246 (citation omitted), under the <u>Colorado River</u> doctrine, a federal court may abstain from a case under "exceptional circumstances," <u>Brown v. Pacific Life Ins. Co.</u>, 462 F.3d 384, 394-395 (5th Cir. 2006); <u>see also</u> <u>Murphy v. Uncle Ben's, Inc.</u>, 168 F.3d 734, 737 (5th Cir. 1999) (<u>Colorado River</u> allows abstention under "extraordinary and narrow" circumstances when the interests of justice require).  In determining whether "exceptional circumstances" exist, the court considers the following six factors: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal

jurisdiction.  <u>Brown</u>, 462 F.3d at 394–95 (citations omitted).  No single factor is determinative; the court must carefully consider all factors, "with the balance heavily weighted in favor of the exercise of jurisdiction."  <u>Id</u>. (quoting <u>Moses H. Cone</u>, 460 U.S. at 16, 103 S. Ct. at 937).

"Abstention is inappropriate in the arbitration setting where a balancing of the <u>Colorado River</u> factors does not weigh very heavily against the exercise of jurisdiction."  <u>Omni Hotels Mgmt. Corp. v. Bayer</u>, 235 Fed. Appx. 208, 211, 2007 WL 1493878, 3 (5th Cir. 2007) (citing <u>Brown</u>, 462 F.3d at 396, and <u>Moses H. Cone</u>, 460 U.S. at 25–26, 103 S. Ct. 927).  In this case, the factors do not weigh against, much less "very heavily" against the exercise of jurisdiction, and therefore, defendants' motion for dismissal based on <u>Colorado River</u> will be denied.

The first <u>Colorado River</u> factor is not present as no res is involved.  The second factor, relative inconvenience of the fora, weighs in favor of exercising jurisdiction.  <u>See</u> <u>Bank One, N.A. v. Boyd</u>, 288 F.3d 181, 185 (5th Cir. 2002) (holding that this factor weighed in favor of district court exercising jurisdiction because the federal court and state court were in same geographic region).

The third factor, the possibility of piecemeal litigation, weighs in favor of this court's exercising jurisdiction.

> Unlike in <u>Colorado River</u>, 424 U.S. at 819, 96 S. Ct. 1236, there is no clear federal policy of avoiding piecemeal adjudication of rights subject to arbitration agreements.  On the contrary, "the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement".  <u>Moses H. Cone</u>, 460

U.S. at 20, 103 S. Ct. 927 ("[A] decision to allow th[e] issue [of arbitrability] to be decided in federal rather than state court does not cause piecemeal resolution of the parties' underlying disputes".) (emphasis in original); see also Snap-On Tools, 18 F.3d at 1265 ("[E]ven if some piecemeal litigation does result, that sometimes is the inevitable result of a congressional policy strongly favoring arbitration".).  "Allowing a federal court to order arbitration, even where a state court may construe an arbitration clause differently, is fully consistent with this established congressional intent."  Brown, 462 F.3d at 396.

Nationstar Mortg. LLC v. Knox, 351 Fed. Appx. 844, 851, 2009 WL 2605356, 7 (5ᵗʰ Cir. 2009).  This is true notwithstanding that Brendan Hammond is a party in the state court action but cannot be made a party to this suit.  Addressing this circumstance, the Fifth Circuit in Brown wrote:

> Allowing a federal court to order arbitration, even where a state court may construe an arbitration clause differently, is fully consistent with [the] established congressional intent (declaring a federal policy favoring arbitration).  This conclusion is not altered simply because a state court's arbitrability decision may involve a party to the arbitration agreement.  See [PaineWebber, Inc. v. Cohen, 276 F.3d 197, 207 (6th Cir. 2001)] (stating that the desire to avoid litigating a single issue, including arbitrability, in multiple fora "is insufficient to overcome the strong federal policy supporting arbitration").  Indeed, it would appear antithetical to the FAA's recognized purpose to require a district court to decline jurisdiction over a properly filed FAA action simply because a party to an arbitrable contract cannot be joined in the federal action.  See Safety Nat'l Casualty Corp. v. Bristol-Myers Squibb Co., 214 F.3d 562, 564 (5th Cir. 2000) (noting that, under Moses H. Cone, the possibility of piecemeal litigation must give way to the overriding federal policy to give effect to arbitration agreements).

Brown, 462 F.3d at 396.

Regarding the fourth factor, the order in which jurisdiction was obtained by the concurrent fora, while defendants repeatedly

recite that their state suit was filed sixty-seven days before AFLAC filed the present action to compel arbitration, the Supreme Court has made clear that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21, 103 S. Ct. at 940.  With this in mind, the Fifth Circuit has held that this factor "only favors abstention when the federal case has not proceeded past the filing of the complaint." Stewart v. W. Heritage Ins. Co., 438 F.3d 488, 492-93 (5th Cir. 2006).  That is not the case here.

The fifth factor, the extent federal law provides the rules of decision on the merits, favors federal jurisdiction.  "[T]he presence of federal-law issues must always be a major consideration weighing against surrender." Moses H. Cone, 460 U.S. at 26, 103 S. Ct. at 942.  Here, the only question before this court is the arbitrability of defendants' state court claims. "Federal law in the terms of the Arbitration Act governs that issue in either state or federal court." Id. at 24, 103 S. Ct. at 941.  See Nationstar Mortg., 351 Fed. Appx. at 852, 2009 WL 2605356, at 8; Conseco Finance Servicing Corp. v. Shinall, 2002 WL 31319368, at 6 (5th Cir. 2002).

Relative to the sixth factor, adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction, the law is clear that while the state court is a concurrent forum where motions to compel arbitration may be

12

considered on the merits, Nationstar Mortg., 351 Fed. Appx. at 852, 2009 WL 2605356, at 8, "enforcement of the [FAA] nevertheless represents federal policy to be vindicated by the federal courts where otherwise appropriate," Moses H. Cone, 460 U.S. at 26 n.32, 103 S. Ct. at 942 n.32).  Thus, where there is no reason to doubt the adequacy of the state court's ability to resolve arbitrability issues, the sixth factor "weighs in favor of abstention," Nationstar Mortg., 351 Fed. Appx. at 852, 2009 WL 2605356, at 8, or is at best "a neutral factor or one that weighs against, not for, abstention," Evanston Ins. Co. v. Jimco, Inc., 844 F.2d 1185, 1193 (5th Cir. 1988).

It is clear from the foregoing that on balance, the Colorado River factors here weigh decidedly in favor of this court's exercising jurisdiction.  Therefore, defendants' motion to dismiss will be denied.

AFLAC's Motion for Summary Judgment/Motion to Strike

AFLAC has produced in support of its motion an application for insurance purportedly signed by David Biles; an Acknowledgment of Arbitration Agreement purportedly signed by David Biles;[5] and

---

[5]   The Acknowledgment of Arbitration Agreement states: I HAVE READ THIS STATEMENT.  I UNDERSTAND THAT I AM VOLUNTARILY SURRENDERING MY RIGHT TO HAVE ANY DISPUTE BETWEEN THE INSURANCE COMPANY AND MYSELF RESOLVED IN COURT.  THIS MEANS I AM WAIVING MY RIGHT TO A TRIAL BY JURY.

I UNDERSTAND THAT UPON RECEIPT OF THE POLICY, I SHOULD READ THE ARBITRATION CLAUSE CONTAINED IN THE POLICY AND THAT I HAVE THE RIGHT TO REJECT THE POLICY WITHIN FIVE (5) DAYS OF THE DATE OF DELIVERY IF I DO NOT WANT TO

the policy itself, which contains an arbitration agreement that provides for arbitration of

> 1.  ANY AND ALL CLAIMS, DISPUTES, OR LAWSUITS THAT I HAVE CONCERNING MY AFLAC POLICY/CERTIFICATE; AND/OR
>
> 2.  ANY CLAIMS, DISPUTES OR LAWSUITS THAT I HAVE CONCERNING ANY RELATIONSHIPS THAT MY AFLAC INSURANCE POLICY/CERTIFICATE CREATES; AND/OR
>
> 3.  ANY CLAIMS DISPUTES OR LAWSUITS CONCERNING THE VALIDITY OF THIS ARBITRATION AGREEMENT; AND/OR
>
> 4.  ANY AND ALL CLAIMS, DISPUTES OR LAWSUITS THAT I HAVE THAT COME UP FROM THE PROPOSED SALE OF THE POLICY/CERTIFICATES BY ANY AGENT OR EMPLOYEE OF AFLAC, INCLUDING ANY ALLEGATION OF FRAUD OR IMPROPER ACT.

In its motion, AFLAC contends it is entitled as a matter of law to an order compelling arbitration of all claims asserted, or to be asserted by defendants against it or against its agent, Brendan Hammond, relating to the subject policy. Defendants, however, contend in response that in light of their evidence, in the form of their handwriting expert Robert Foley's affidavit asserting his opinion that Biles' putative signatures on the application and arbitration acknowledgment are forgeries, they have created a genuine issue of material fact on whether their decedent ever entered an arbitration agreement so that AFLAC's summary judgment motion must be denied.

---

ACCEPT THE REQUIREMENT FOR ARBITRATION.

I UNDERSTAND THAT THIS SAME TYPE OF INSURANCE MAY BE AVAILABLE THROUGH AN INSURANCE COMPANY THAT DOES NOT REQUIRE THAT POLICY RELATED DISPUTES BE RESOLVED BY BINDING ARBITRATION.

Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Section 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement."  Id. § 3. Section 4 allows a party to petition for an order compelling arbitration when there has been a "failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." Id. § 4.  Pursuant to § 4, a court shall order arbitration "in accordance with the terms of the agreement" provided it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue...."  Id.

When considering a motion to compel arbitration under the FAA, the court employs a two-step analysis.  "First, a court must determine whether the parties agreed to arbitrate the dispute in question.  Second, a court must determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."  Tittle v. Enron Corp., 463 F.3d 410, 418 (5th Cir. 2006) (internal citations and quotation marks omitted).  "The first step of the analysis—whether the parties agreed to arbitrate the dispute in question—consists of two separate determinations: '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in

question falls within the scope of that arbitration agreement.' "
Id.

"While there is a strong federal policy favoring arbitration,
the policy does not apply to the initial determination whether
there is a valid agreement to arbitrate." Banc One Acceptance
Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004) (citing
Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214 (5th
Cir. 2003)).  "Nonetheless, once a court determines that an
agreement to arbitrate exists, the court must pay careful
attention to the strong federal policy favoring arbitration and
must resolve all ambiguities in favor of arbitration." Banc One,
367 F.3d at 429 (citations omitted).  Here, defendants do not
contend there are any legal constraints external to the putative
arbitration agreement that would prevent arbitration; instead
their argument focuses solely on whether there is a valid
agreement to arbitrate.

Where a party opposes arbitration on the basis of a forged
signature, the challenge goes to the "very existence of [the]
agreement" and therefore is an issue that the court must decide
before it may compel arbitration. Will-Drill Resources, Inc. v.
Samson Resources Co., 352 F.3d 211, 218 (5th Cir. 2003) ("[B]ecause
arbitration is a matter of contract, where a party contends that
it has not signed any agreement to arbitrate, the court must first
determine if there is an agreement to arbitrate before any

additional dispute can be sent to arbitration."); [6] see also AET
Inc. Ltd. v. C5 Communications, LLC, Civil Action No. G-06-487,
2006 WL 3513839, 2 (S.D. Tex. Dec. 5, 2006) ("It is clear ... that
if there are 'claims that the signature is forged or the agent
lacked authority to bind the principal,' then the 'very existence
of [the] agreement' is in question, and the court must decide the
matter.") (quoting Will-Drill).

The question for the court at this point is whether
defendants have presented sufficient evidence of forgery to
withstand AFLAC's motion for summary judgment.  Apart from
speculation and theories, defendants' evidence which they contends
supports their forgery allegation consists solely of Robert
Foley's affidavit in which he states that based on his examination
of copies of the subject documents, he is of the opinion that the
signatures on the application and arbitration acknowledgment, more
probably than not, are not those of David Biles.  However, AFLAC
has moved to strike Foley's affidavit, contending it is not
sufficiently reliable to be admissible under Federal Rule of Civil
Procedure 702 and the standards established in Daubert v. Merrell

---

[6]    In Will-Drill Resources, Inc. v. Samson Resources Co.,
352 F.3d 211 (5th Cir. 2003), the court reasoned:
    [W]here the very existence of an agreement is
    challenged, ordering arbitration could result in an
    arbitrator deciding that no agreement was ever formed.
    Such an outcome would be a statement that the arbitrator
    never had any authority to decide the issue.
Id. at 219.  This court's contrary conclusion in AmSouth Bank v.
Bowens, 351 F. Supp.2d 571, 575 (S.D. Miss. 2005), that a forgery
defense was for the arbitrator, was in error.

Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

Pursuant to Federal Rule of Evidence 702, experts qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury. Fed. R. Evid. 702. "A party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" Smith v. Goodyear Tire & Rubber Co., 495 F.3d 224, 227 (5th Cir. 2007) (quoting Fed. R. Evid. 702). In Daubert, the Supreme Court assigned district courts the role of gatekeeper, responsible for assessing proposed expert testimony to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. (quoting Daubert, 509 U.S. at 593-95, 113 S. Ct. 2786). The Court provided a list of factors that courts may use when evaluating the reliability of such testimony, including whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. Id. at 593-94, 113 S. Ct. 2786; Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002) (summarizing Daubert requirements). The

Court made clear in <u>Kumho Tire Co. v. Carmichael</u>, that this list is illustrative, not exhaustive, and that the use of the <u>Daubert</u> factors in determining whether testimony is admissible should be flexible and "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (internal quotations omitted); <u>Pipitone</u>, 288 F.3d at 244.  The district court is responsible to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Kumho Tire</u>, 526 U.S. at 152, 119 S.Ct. 1167.

"In short, expert testimony is admissible only if it is both relevant and reliable." <u>Pipitone</u>, 288 F.3d at 244.  Whether an expert's testimony is reliable is a fact-specific inquiry. <u>Burleson v. Tex. Dep't of Criminal Justice</u>, 393 F.3d 577, 584 (5th Cir. 2004).  The proponent of the expert testimony must prove by a preponderance of the evidence that the testimony is reliable. <u>Moore v. Ashland Chem. Inc.</u>, 151 F.3d 269, 276 (5th Cir.1998) (en banc).

In his initial affidavit submitted in support of defendants' response to AFLAC's summary judgment motion in the case at bar, Foley stated that he obtained photostatic copies of the AFLAC application and arbitration acknowledgment form, and compared the

signatures on these documents to known exemplars of David Biles'
signature, and following "a very careful overt and microscopic
examination conducted utilizing the scientific method of
comparison of similar letters and/or letter combinations to
determine the existence or absence of class and individual writing
habits or differences between the signatures in question and the
exemplar signatures," determined that the signatures on the AFLAC
documents are likely not David Biles' signature.

In a supplement to its motion for summary judgment submitted
in response to defendants' forgery claim and further in support of
its motion to strike Foley's affidavit, AFLAC has presented
evidence that David Biles' signature on the application and
arbitration acknowledgment form was not an "ink signature," but
rather was an electronic signature, obtained via a Topaz Systems,
Inc. (Topaz) signature pad; and it has submitted the affidavit of
William Flynn, its own expert forensic handwriting examiner who
has particular expertise relating to the Topaz pad, in which Flynn
explains that because of the electronic nature of the signatures
at issue, the images upon which Foley relied in forming his
opinion are not "accurate representations of the actual signatures
as made on the tablet." According to Flynn, in order to review
and consider the signatures and their authenticity, an expert
would need to examine the data files used to create the images
representing David Biles' electronic signature on the subject
documents; and yet Foley's affidavit fails to reflect either that

he was aware that the signatures he examined were electronic
signatures or that he examined the data files in forming his
opinion.[7]

AFLAC thus has moved to strike Foley's affidavit on the bases
that: (1) it does not take into account the electronic nature of
David Biles' signature because at the time of his report, Foley
was not aware the signature was electronic; (2) Foley based his
opinion on copies of the images of what he contends are the
disputed signatures and yet the copies of the signatures are not
the best evidence of the disputed signatures and do not provide
sufficient detail on which to base an analysis; (3) the images
upon which Foley relied are not "accurate representations of the
actual signatures as made on the tablet"; and (4) Foley failed to
review and consider the data files used to create the images
representing Biles' electronic signature.[8]

---

[7]     The court notes that ALFAC's supplemental motion is also
accompanied by an affidavit from Karoline Finch, owner of the hair
salon where David Biles worked prior to his death as manager.  Ms.
Finch attests that she was present when Brendan Hammond made a
sales presentation to several of her stylists, including Biles,
and that Kenneth Ashley, Biles' life partner, was not present at
the time.  According to Ms. Finch, following the presentation,
David Biles, accompanied by Hammond, came to her office, told her
he had decided to buy a policy and asked if the premiums could be
paid through payroll deduction.  Ms. Finch states that as
requested and authorized by Biles, she paid the monthly premiums
for his AFLAC policy by payroll deduction.

[8]     As summarized by AFLAC based on Flynn's report, the
Topaz tablet takes a high resolution input that can create a high
resolution signature, but embeds a low resolution smaller image of
the signature in the form by discarding some of the points to
create the image on the document that is used for printing.
Because a low resolution image is "plugged" into the form that can

In response to AFLAC's motion to strike, defendants submitted a supplemental affidavit from Foley, in which he asserts that in forming his opinion, he did take into account that he was examining an electronic image; that he based his opinion on a photocopy of that image, which he maintains is considered adequate for comparison purposes in the field of document examination if the original is unavailable and the copy is of sufficient quality; that what is important in the examination is the resulting image and not how it was created; and finally, that the quality of the copy in this case was sufficient and that the fact that he had only a photocopy was not a limiting factor in his examination.

AFLAC responds in its rebuttal that Foley's assertion in his supplemental affidavit that it is not important how the signature was created, is contrary to the standards and guidelines employed by other experts in the field of forensic document examination, which consistently recognize that in order to perform an accurate and reliable analysis, the first thing a document examiner should determine is how the signature was created and what device or software was used to capture the signature.  It further argues that Foley's assertion that photocopies are sufficient for analysis purposes, misses the point of AFLAC's motion, which is that the signature generated in the signature field on the

---

be printed, no matter how much that signature image is later magnified, it will never create a clear picture of the original signature represented by the data.  Review of the embedded data is essential to an accurate analysis of the signature.

application and arbitration acknowledgment form, respectively, is
not a sufficient representation of Biles' signature *as made on the
electronic pad*.  Rather, what must be examined, and what Foley has
not examined, is the embedded data collected by the Topaz tablet,
as that is Biles' original signature; and only with proper
software and analysis can an examiner create an accurate
representation of the Biles' signature, which Foley failed to do,
or to account for in rendering his opinion.

       In evaluating an expert's opinions for admissibility, the
court must focus "solely on the principles and methodology, not on
the conclusions that they generate."  <u>Daubert</u>, 509 U.S. at 595,
113 S. Ct. 2786.  However,

       conclusions and methodology are not entirely distinct
       from one another.  Trained experts commonly extrapolate
       from existing data.  But nothing in <u>Daubert</u> or the
       Federal Rules of Evidence requires a district court to
       admit opinion evidence which is connected to existing
       data only by the *ipse dixit* of the expert.  A court may
       conclude that there is too great an analytical gap
       between the data and the opinion offered.

<u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 146, 118 S. Ct. 512,
139 L. Ed. 2d 508 (1997).

       In the case at bar, in his supplemental affidavit submitted
in response to AFLAC's motion which challenged the reliability of
his opinion on specific bases, Foley has not addressed or
attempted in any substantive way to challenge or refute AFLAC's
assertions, which are well supported by its own expert, that the
signature images on which Foley based his opinion are merely
copies of an inaccurate image of Biles' electronic signature, and

that the best evidence, and only evidence of Biles' actual electronic signature, consists of the embedded data collected by the Topaz tablet.  Given these omissions, Foley's assertion in his supplemental affidavit that he took into account the fact that the purported signature of David Biles on the AFLAC documents were electronic signatures and that analysis of photocopies of those signatures is adequate, connects his opinion to the existing data only by his *ipse dixit*.  The court would thus be well warranted in concluding that defendants have not sustained their burden to establish the reliability of Foley's opinion, as expressed in his affidavits, and thus in striking Foley's affidavit.  See Moore, 151 F.3d at 276 (stating, "[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable.  This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient.").

However, in its discretion, the court will not strike Foley's affidavit at this time but will instead conduct a Daubert hearing, as provided for by Federal Rule of Evidence 104(a), to determine whether Foley's proffered opinion is scientifically valid and whether his claimed reasoning or methodology properly can be applied to the facts of this case.  Daubert, 509 U.S. at 592-93, 113 S. Ct. at 2796.

Having said this, assuming solely for purposes of addressing further issues raised by AFLAC's summary judgment motion that the signatures on the application and acknowledgment of arbitration agreement are genuine and the arbitration agreement is therefore valid, the court concludes that defendants' claims against both AFLAC and Hammond fall within the scope of the agreement.  First, the claims/lawsuit obviously relate to the AFLAC policy, the relationships it creates, and the sale of the policy.  Moreover, as third-party beneficiaries of the policy, defendants, though nonsignatories, are nevertheless bound to arbitrate these claims. See Adams v. Greenpoint Credit, LLC, 943 So. 2d 703, 708 (Miss. 2006) (arbitration agreements can be enforced against non-signatories if such nonsignatory is a third-party beneficiary) (citing Smith Barney, Inc. v. Henry, 775 So. 2d 722, 727 (Miss. 2001)); Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd., 601 F.3d 329, 336 (5th Cir. 2010) (observing that Supreme Court has "made clear that state law controls whether an arbitration clause can apply to nonsignatories") (citing Arthur Andersen LLP v. Carlisle, --- U.S. ----, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009)).

The court concludes, further, that defendants, in addition to being bound to arbitrate their claims against AFLAC, must arbitrate their claims against Hammond, for at least two reasons. First, defendants' claims against Hammond relate to his actions in connection with his involvement in the ostensible sale of the

policy, and the arbitration agreement provides for arbitration of "any all claims, disputes or lawsuits ... that come up from the proposed sale of the policy/certificate by any agent or employee of AFLAC, including any allegation of fraud or improper act."  The claims against both AFLAC and Hammond relating to Hammond's alleged misdeeds are indisputably covered by this provision. Furthermore, as AFLAC notes, defendants assert claims against AFLAC based on alleged misconduct of Hammond, as AFLAC's agent, in the procurement of the policy and payment of benefits to Kenneth Ashley.  See Sawyers v. Herrin-Gear Chevrolet Co., Inc., 26 So. 3d 1026, 1039 (Miss. 2010) (explaining that claims against nonsignatory are subject to arbitration where "allegations against nonsignatory and signatory "involve 'substantially interdependent and concerted misconduct' between ... (a signatory) and ... (a nonsignatory), which maintained 'a close legal relationship, such as, ... [an] agency relationship'") (quoting B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So. 2d 483, 491-92 (Miss. 2005)); Qualcomm, Inc. v. American Wireless License Group, LLC, 980 So. 2d 261, 269 (Miss. 2007) (stating that "a non-signatory may be able to enforce an arbitration agreement against a signatory where the non-signatory has a close legal relationship with a signatory of the agreement") (citing Wedgeworth, 911 So. 2d at 492).

In summary, the court will at this time stay further consideration of AFLAC's summary judgment motion and motion to strike until such time as a Daubert hearing is conducted.

Following such hearing, if the court concludes that Foley's testimony is inadmissible under Daubert, then AFLAC's motion for summary judgment will be granted, since defendants have offered no other evidence which they contend creates a genuine issue of material fact on the forgery issue.[9]  On the other hand, if the court concludes that his opinion is reliable according to Daubert standards, the summary judgment motion will be denied, and the case will be tried in due course on defendants' forgery claim.

Defendants' Motion for Leave to File Counterclaim and Third-Party Complaint

Defendants have moved for leave to file a counterclaim against AFLAC and a third-party complaint against Brendan Hammond in the event the court denies their motion to dismiss.  The court will deny this motion.

Defendants propose to assert via counterclaim and third-party complaint various claims for recovery against AFLAC and Hammond, respectively, based on allegations that AFLAC and Hammond were

---

[9]     The court acknowledges that defendants, notwithstanding that they previously represented to the court that they have "fully responded" to AFLAC's summary judgment motion, have recently filed a motion requesting "Rule 56 (f) discovery, including, but not limited to, Interrogatories, Requests for Production, Requests for Admissions, and the deposition of Brendan Hammond, in order to fully and completely respond to AFLAC's Motion for Summary Judgment."  In this motion, defendants assert, inter alia, that AFLAC has failed to make Brendan Hammond available for a deposition, which they submit they need in order to fully respond to AFLAC's summary judgment motion.  In the court's opinion, it is clear that defendants have failed to show that discovery is required in order to fully respond to the motion, and therefore, defendants' Rule 56(f) motion will be denied.

involved in the alleged forgery of David Biles' signature on the
insurance application and arbitration acknowledgment.  For
example, in their proposed counterclaim and third-party pleading,
defendants assert, *inter alia*, that Hammond, as agent for AFLAC,
"filled out and signed the alleged Acknowledgment of Arbitration
Agreement and the application and forged the name of David Biles
on the Acknowledgment of Arbitration Agreement and the application
for insurance," and then AFLAC and Hammond "attempted to defeat
the legitimate claims of the [Biles heirs] and to take advantage
of the forgery of David Biles' signature [by seeking] arbitration
both in State and Federal Court[,]" even though they both "at all
times knew and were aware that David Biles did not sign the
Acknowledgment of Arbitration Agreement and in a gross and
reckless disregard for the rights of the Plaintiffs attempted to
arbitrarily and capriciously enforce an Acknowledgment of
Arbitration Agreement which was not signed by Plaintiffs or
Plaintiffs' decedent."  Defendants further propose to charge that
Hammond, who acted as AFLAC's agent, was involved in an alleged
plot with Kenneth Ashley to procure life insurance on David Biles
and then kill him for the insurance proceeds.

As observed <u>supra</u>, the dispositive issue on AFLAC's complaint
to compel arbitration, and its motion for summary judgment, is
whether David Biles signed the application and arbitration
acknowledgment.  The court has determined that defendants' claims
against AFLAC and Hammond in their state court suit clearly fall

within the scope of the putative arbitration agreement; and
defendants' challenge to the validity and/or enforceability of the
arbitration agreement is based solely on their contention that the
signatures on the application and acknowledgment form are forged.
If it is ultimately determined that the signatures on the
application and arbitration acknowledgment form are genuine, then
this court will enforce the arbitration agreement and compel
arbitration of all defendants' claims.  If, on the other hand, it
is ultimately determined that the signatures are forgeries, then
the court will necessarily conclude that there is no valid
arbitration agreement and dismiss AFLAC's complaint, and
defendants will proceed with their claims against AFLAC and
Hammond in state court on the very claims/theories they propose to
advance in this court via the proposed counterclaim and third-
party complaint.  In short, the purpose of this litigation is to
determine whether defendants must arbitrate their claims against
AFLAC and Hammond or whether they may proceed with the claims they
have already asserted in their state court action.

        Conclusion

        Based on the foregoing, it is ordered that defendant Michael
Lockwood's motion to dismiss is denied; defendants' motion to
dismiss is denied; defendants' Rule 56(f) motion is denied;
defendants' motion for leave to file counterclaim and third-party
complaint is denied; and the court reserves ruling on AFLAC's

motion (including supplemental) for summary judgment and its
motion (including amended) to strike Robert Foley's affidavit),
pending a <u>Daubert</u> hearing, which the court will promptly schedule
following entry of this opinion.

     SO ORDERED this 8th day of September, 2011.


_____
     UNITED STATES DISTRICT JUDGE